Bredbenner *v.* Bredbenner, Appellant.

Argued March 1, 1954. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Conrad A. Falvello,* with him *Anthony C. Falvello,* for appellant.

*Louis Geo. Feldmann,* with him *Joseph J. Marticelli,* for appellee.

OPINION BY ROSS, J., July 13, 1954:

In this divorce action, the master recommended that the plaintiff-husband be granted a divorce on the grounds of cruel and barbarous treatment and indignities. From the dismissal of her exceptions to the master's report by the court en banc of Luzerne County the defendant-wife has appealed to this Court.

Plaintiff, 31 years of age at the time of the hearing, and defendant, then 29, were married on September 11, 1950, and have one child, a son, born April 21, 1951. They lived with defendant's father and brother in McAdoo for a period of about nine months after their marriage, then moved to Freeland. Marital difficulties beset them from the outset and a series of temporary separations ensued, which culminated in final separation on Thanksgiving Day 1951.

The parties themselves and plaintiff's father were the only witnesses, and much of the testimony is contradictory.

We have examined the record and have arrived at our independent conclusion, as is incumbent on us in divorce cases (*Lupowitz v. Lupowitz,* 169 Pa. Superior Ct. 581, 83 A. 2d 501; *Cowher v. Cowher,* 172 Pa. Superior Ct. 98, 91 A. 2d 304), and find that plaintiff has not sustained the burden of proving such course of treatment on the part of defendant as endangered his life or rendered further cohabitation unsafe. *Edelman v. Edelman,* 165 Pa. Superior Ct. 485, 69 A. 2d 165. Hence we confine our consideration solely to the charge of indignities.

The essential feature of the offense of indignities to the person, within the meaning of our Divorce Law (Act of May 2, 1929, P. L. 1237, sec. 10, 23 PS sec. 10 as amended) is that it must consist of a course of conduct or continued treatment which renders the condition of the innocent party intolerable and his or her life burdensome. *Martin v. Martin,* 154 Pa. Superior Ct. 313, 317, 35 A. 2d 546; *Kobryn v. Kobryn,* 174 Pa. Superior Ct. 472, 102 A. 2d 173. To prevail plaintiff must sustain the burden of proving not only that defendant by a course of conduct rendered his condition intolerable and life burdensome, but also that he was the innocent and injured spouse (*Wilson v. Wilson,* 163 Pa. Superior Ct. 546, 63 A. 2d 104; *Matovcik v. Matovcik,* 173 Pa. Superior Ct. 267, 270, 98 A. 2d 238), and such proof must be based on a preponderance of clear and satisfactory evidence. *Orsuto v. Orsuto,* 171 Pa. Superior Ct. 532, 91 A. 2d 284.

Plaintiff testified that "the start of the trouble" occurred in October 1950 (a month after the marriage) when he was attending a cabinet school (a "G.I. school"). He wanted to finish the course and his wife

approved of his desire to do so. After school hours he tried to earn some money by hauling with a truck which he owned. When he returned late in the evening after being out with the truck, defendant accused him of having spent the time with other women. Defendant admitted having accused plaintiff of infidelity and offered in evidence a letter written to him by another woman, which letter she found in his wallet three months after the marriage. Plaintiff explained that the letter had been written to him while he was in Ohio in 1948 (prior to the marriage). There was no date on the letter and defendant failed to go forward with the evidence to show that it had in fact been received by plaintiff after his marriage to her. Hence we find no justification therein to bring her within the rule of *Kranch v. Kranch,* 170 Pa. Superior Ct. 169, 84 A. 2d 230, and *Cunningham v. Cunningham,* 171 Pa. Superior Ct. 577, 91 A. 2d 301, that where the accusing spouse so conducts himself with other women that the wife has just reason to be suspicious, her accusations furnish no support to the charge of indignities.

Defendant testified that plaintiff drank to excess. He, in turn, admitted to taking "a few beers now and then". However, defendant admitted to drinking herself, and plaintiff's father testified that his son and daughter-in-law would drink "in the beer joints together". Under these circumstances defendant's charge of drinking is unavailable to her to establish that plaintiff is not an "injured and innocent spouse". See *Hunter v. Hunter,* 169 Pa. Superior Ct. 498, 83 A. 2d 401; *Blatt v. Blatt,* 172 Pa. Superior Ct. 391, 393-394, 94 A. 2d 160.

As we stated supra, much of the testimony is irreconcilable. Credibility is, therefore, a prime factor. *Brzezinski v. Brzezinski,* 174 Pa. Superior Ct. 627, 101 A. 2d 164. The master, affirmed by the court en banc,

believed plaintiff's testimony and discredited defendant's. While we are not bound by the master's conclusions as to credibility, his judgment upon that vital factor is entitled to the fullest consideration, as he has had the opportunity, not accorded to us, to observe the demeanor and appearance of the witnesses, which in many instances become "the very touchstone of credibility". *Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371; *Wiggins v. Wiggins,* 171 Pa. Superior Ct. 298, 90 A. 2d 275.

With particular reference to plaintiff's charge of the use of vile epithets by defendant, which his father corroborated, we infer from the tenor of the language used by defendant in certain passages of her testimony that she was not incapable of expressing herself in even more unrepressed fashion outside the decorum of the court room. Hence a reading of the cold record reveals this one instance at least, to fortify the master's conclusion as to credibility, and we are, a fortiori, reluctant to disturb it.

In our view, the most serious charge of the complaint is the averment, undenied by defendant, that on several (six according to her testimony and twelve according to his) occasions she had him arrested for assault and battery. On one occasion he was jailed for two hours until his brother had him released. His father testified that he furnished bail "almost every time". Plaintiff denied categorically, both on direct and on cross examination, that he had ever beaten his wife. Defendant, on the other hand, produced no evidence tending to justify her conduct—nothing to indicate that on the particular occasions she had reason to believe he was about to do her bodily harm.

We pass over lightly the controversial testimony relative to defendant's housekeeping habits, not because it is unimportant in its general effect on the

morale of a family but because in this case we regard it as surplusage.

Defendant contends that plaintiff has at most established only a doubtful balance of the evidence which, under the rule as set forth in *Wagner v. Wagner,* 112 Pa. Superior Ct. 485, 171 A. 419, does not entitle him to a decree of divorce. See also *Daly v. Daly,* 137 Pa. Superior Ct. 403, 404-405, 9 A. 2d 192; *Oliver v. Oliver,* 172 Pa. Superior Ct. 600, 605-606, 94 A. 2d 124. We do not agree. Plaintiff averred continuous unfounded accusations of infidelity, which, accompanied by other degrading conduct, was sufficient to make out a case of indignities to the person. *Turner v. Turner,* 171 Pa. Superior Ct. 519, 521, 89 A. 2d 893; *Thornton v. Thornton,* 168 Pa. Superior Ct. 391, 395, 77 A. 2d 691. Defendant admitted the accusations but named no woman with whom she or anyone else had ever seen him during the time he alleged he was working with his truck, or at any other time. She did not rebut his assertion that the letter from the girl which she offered in evidence was written before their marriage, or that plaintiff had seen the writer since that time. Arrest, without reasonable justification therefor, is certainly an indignity to the person. Defendant admitted the arrests but the record is barren of any evidence that plaintiff struck her, or that on any named occasion she had a rational basis for fearing he would. She brought forth no record or statement that her alleged drinking companion was absent from his employment at Bethlehem, daily transportation to which necessitated his rising at 3 a.m. We think this constitutes not a doubtful balance of the evidence but a preponderance thereof in plaintiff's favor.

Defendant also appeals from an order of the court below providing for the payment of additional counsel fees and costs incident to the appeal. Plaintiff had

paid $150 counsel fees prior to the taking of this appeal and the lower court ordered him "to pay defendant $75 additional counsel fees for the appeal, $25 incidental expenses, plus cost of printing the paper book". The amount of counsel fees was a matter within the discretion of the court below (*Brady v. Brady*, 168 Pa. Superior Ct. 538, 79 A. 2d 803), and while in this case the order might have been made in a substantially larger amount, we cannot say that the court manifestly abused its discretion.

Decree and order affirmed.