## Schware v. Schware

440

*Stanley V. Printz*, for plaintiff.

*Harry P. Creveling*, for defendant.

HENNINGER, P. J., July 28, 1959.—The parties to this divorce action were married on February 26, 1934, and lived together until January 22, 1958, when plaintiff established a separate residence for herself. Both parties are 47 years old and have a married daughter 23 years old. At the time of the hearings about a year ago, defendant, having lost a trucking business, was unemployed, and plaintiff, who worked most of her married life, was employed as a trained nurse.

The case is unusual in that there is little dispute in the testimony.

Plaintiff accuses defendant of complete neglect of her. She described him as a "roomer" in their home. Defendant admits that he was home only to sleep and that he and his wife did not go out together often because she did not enjoy the taproom company that he kept.

Defendant has no complaints against his wife although both admit that in earlier years she would scream and "blow her top" in frustration at his neglect of her. Plaintiff admitted that defendant was never abusive, ill-mannered or unkempt, regardless of obvious overindulgence in alcohol, and that defendant never argued with her.

Plaintiff specified only two occasions, one when defendant walked in on the daughter's sorority meeting

and again when he arrived after a Christmas dinner was over, when defendant's drinking was a cause of embarrassment, although frequently she found it disgusting.

Defendant admitted to drinking regularly but denied that it was excessive. He justified his late hours and drinking on the grounds that he needed to entertain present and prospective customers in the trucking business.

Defendant asserted and plaintiff conceded that defendant was ambitious and indefatigable in the conduct and development of his business. Defendant justified his admitted neglect of his wife by his goal of some day selling out a successful business and presenting the proceeds to his wife on a silver platter. As it turned out, both the business and the home fell apart.

The master found a case of studied neglect and recommended a decree in divorce, to which defendant filed exceptions: (1) To findings of fact that plaintiff was the innocent and injured spouse, that defendant ignored her, that defendant regularly came home late at night or not at all and that at times he could not be located, that he drank frequently and to excess for business purposes and with friends, causing plaintiff to lose her temper and "blow her top," which was embarrassing to plaintiff, as defendant admitted; (2) to conclusions of law that plaintiff was the innocent and injured spouse, that defendant's acts constituted an indignity and that plaintiff was entitled to a divorce.

There is no disputing these facts that during almost the entire period of the marriage, defendant, a hard working and successful businessman, completely neglected his home and family except to use the home for sleeping for a few hours per day, that he came home visibly affected by liquor and that he spent every evening and part of the day drinking with customers

and friends to the chagrin and embarrassment of his wife, who was employed and maintained the home.

We discount several elements in defendant's defense. He would have us find that the admitted neglect and the steady drinking were all in the interests of building a business. If that were accepted, he would have us find that, although he was pursuing the false philosophy of postponing the enjoyment of life until some distant date and would achieve it by the amassing of material goods, he would not be guilty of neglecting his wife.

In our experience, the steady drinker is not usually a very reliable judge of the amount consumed or of the quantity that can be successfully carried or that is socially acceptable. We therefore accept plaintiff's testimony that, although defendant was continent and neither combative or boisterous, he regularly demonstrated a marked degree of departure from reasonable sobriety. Plaintiff testifies that she found this disgusting and if she so states, we have no reason to doubt the truth of her statement.

Nor can we accept defendant's statement that all of his drinking, night after night, and even in the daytime, was necessary business entertainment. We are convinced that in large part it was indulgence in a way of life in which his wife had no part. We find this to be true especially since his office was instructed to tell no one, including his wife, where he could be found.

Since defendant admitted that plaintiff was justified in her complaint that he was neglecting her, we find that the neglect was not as casual as he would now make it appear. It was a deliberate choice on his part. That he wanted the comforts of a home and wife on his own terms does not mitigate the offense of utter neglect. Furthermore, the acknowledgment of cause for complaint on plaintiff's part forestalls any contention that her complaints were a provocation for de-

fendant's indignities. Plaintiff testified that her complaints ceased several years ago, although defendant's conduct continued after that time.

Had plaintiff not earned her own way during all but a few years of the marriage, we might attribute her bid for freedom to an abandonment of a defeated husband. Since, however, she did not share in her husband's success, we accept her statement that the timing of the divorce bears no relation to her husband's failure but is due to an accumulation of indignities and to the independence of her married daughter.

It is clear then that plaintiff has been the victim of defendant's studied neglect, continued without respite over a long period of years.

The difficulty in this case arises from interpretation of the language usually quoted from Breene v. Breene, 76 Pa. Superior Ct. 568, 572:

"It has been held by many courts (see 14 Cyc. 625) that they [indignities] may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient."

We have had no difficulty in finding studied neglect and manifest disdain in defendant's part. His counsel emphasizes, however, the words "and every other plain manifestation of settled hate and estrangement." He insists that studied neglect and manifest disdain are not indignities to the person entitling the victim to a divorce unless they are a plain manifestation of settled hate and estrangement. There is authority for this proposition: Davidsen v. Davidsen, 127 Pa. Superior Ct. 138, 142; Linch v. Linch, 63 Montg. 318, 322; Smith v. Smith, 49 Lack. Jur. 213.

Defendant would have us find from his absence of abuse and from his expressions of respect for his wife that no inference of settled hate and estrangement could be drawn. Estrangement there certainly was and if hate is considered in its negative rather than in its positive sense, we can also find it in his actions which speak louder than his honeyed words. The fact that he found his wife a convenient and competent housekeeper and his willingness to profit by these qualities of hers does not prevent our inference of settled hate toward and estrangement from her as a wife.

We have not considered plaintiff's testimony concerning defendant's drinking as an indignity, because it did not lead to a course of conduct causing embarrassment or humiliation. We cannot, however, overlook the fact that on at least two occasions it was extremely embarrassing and humiliating and that plaintiff found its frequent recurrence a constant source of disgust.

Our case closely resembles that of Brubaker v. Brubaker, 4 Dist. R. 185, in which defendant rarely spoke to his wife, was away from home continually and isolated himself from her when he was at home. Though there was no evidence of physical or verbal abuse, the court held indignities had been proved.

To like effect are the cases of Commonwealth ex rel. Whitney v. Whitney, 160 Pa. Superior Ct. 224, 229, and Clements v. Clements, 21 D. & C. 661, 662.

We are convinced that plaintiff has been subjected to a course of conduct that constituted indignities entitling her to a divorce.

Now, July 28, 1959, after a careful and independent review of the entire record, the findings, conclusions and recommendation of the master and examiner are sustained and the exceptions thereto are dismissed and it is ordered, adjudged and decreed that a decree in divorce a vinculo matrimonii be granted.